Filed 10/28/13  In re L.L. CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Placer)

----

|  |  |
|---|---|
| In re L.L., a Person Coming Under the Juvenile Court Law. | |
| PLACER COUNTY DEPARTMENT OF HEALTH AND HUMAN SERVICES, | C072701 |
| Plaintiff and Respondent, | (Super. Ct. No. 53-003215) |
| v. | |
| D.L., | |
| Defendant and Appellant. | |

This dependency case is the result of an extremely acrimonious divorce and custody battle during which both parents' behavior produced such serious emotional distress in the minor, L.L., that it was necessary for the juvenile court to remove the minor from their custody.  The mother subsequently learned to modify her behavior and regained custody of the minor.  The father, D.L., remains mired in the past and now appeals from orders of the juvenile court terminating the dependency and awarding sole legal and physical custody to the mother.  (Welf. & Inst. Code, § 362.4 [further

1

undesignated statutory references are to the Welfare & Institutions Code].) Father contends the custody and visitation order is vague; the court gave mother the power to deny visits; and the evidence did not support the visit conditions. We affirm.

FACTS

The case was referred to Placer County Department of Health and Human Services (Department) by the Placer County Family Law Court (§ 329) in 2011 because the minor's therapist said that six-year-old L.L. was unable to make progress in resolving her emotional problems in therapy due to the ongoing parental conflict. The minor's anxiety and stress produced increasingly severe behaviors as the minor tried to control her environment. A psychological evaluation ordered by the Family Law Court concluded the parents had no coparenting abilities and each believed the other was abusing the minor sexually or emotionally. The evaluation recommended that if the parents were unwilling or unable to learn to coparent, then the minor should be placed in the primary custody of one parent.

Following an investigation, the Department filed a petition in April 2011 alleging the minor came within the provisions of section 300, subdivision (c), because the minor was suffering, or at risk of suffering, serious emotional damage as a result of parental conduct. The court ordered the minor detained and permitted each parent to have supervised visits with the minor two to three times a week.

At the time the petition was filed, the parents shared the physical custody of the minor equally on an alternating weekly basis. The minor's therapist described father as having an agenda and not listening while mother had no control over the minor's behavior. The therapist reported that father constantly degraded mother in the minor's presence and blamed mother for their problems. The therapist found mother to be dramatic but open to learning new skills while questioning whether father could change. The therapist stated the minor was aware of the parental conflict and was acting out from stress. Mother believed the minor had suffered from the litigation over the last four

2

years, but that the emotional abuse was not her fault. Father blamed the Department for the minor's removal and insisted that the minor's emotional abuse stemmed from mental abuse and manipulation by mother. The social worker concluded that the parents were battling over the minor which caused the minor extreme anxiety. Engaging in their mutual dislike appeared to be more important to the parents than the minor's well-being. Each parent was focused on the need to win but what each needed was to change focus to the minor's needs and move on from the past.

After a lengthy hearing, the juvenile court sustained the petition, ordered the parents to participate in services and placed the minor in foster care.

As the six-month review neared, father continued to blame the Department, insist that the social worker favored mother and was impatient for the minor to return home. Both parents had participated in services but progress was slow. New psychological evaluations of the parents found they both tended to have histrionic traits and emotional reactivity. The evaluation recommended the parents engage in therapy to improve personal responsibility, complete a coparenting counseling program and take a parenting class to improve parenting skills.

The minor was doing very well in foster care and in therapy, although the therapist was concerned that father needed to redirect some of the minor's requests for physical interaction with him to something more appropriate and to maintain better boundaries with the minor. The separate visits highlighted the parents' different parenting styles, with mother engaging in shared activities and father in movies and horseplay. Mother believed she was changing and her relationship with the minor was improving. Father said he did not need therapy and had not learned a thing in the classes and counseling. Father wanted to know what the Department was doing to shorten the time the minor was out of the home. The parents continued to blame each other for their ongoing problems, with father also blaming the Department and the court.

Prior to the six-month review hearing, the coparenting therapists reported that, although the parents tried to apply coparenting techniques, they were unable to coparent because each contended the other presented obstacles to doing so. The therapists agreed with this assessment. The father's therapist reported that father's distrust of the system limited his ability to establish treatment goals. The therapist, noting that therapy only works when the client sees a need for change, said he was unable to be of further help to father who was not ready to accept intervention. In most of the sessions, father spent time and energy arguing his position, criticizing others and claiming he was a victim of the system. At the review hearing, the court continued services and set an interim and a 12-month review hearing.

The interim Court-Appointed Special Advocate (CASA) report stated the CASA had seen an overall change in the minor who was happy and chatty when talking about her parents, particularly mother. The social worker's interim report said mother resided in Southern California and traveled to Placer County for visits and therapy. Father was referred to a new therapist but was still unwilling or unable to participate in a meaningful way because he did not see he had done anything wrong. The minor was stable in foster care and had improved both attitude and boundaries. The social worker's assessment was that father remained invested in the fight, misconstrued statements made to him, and made assumptions rather than listening to what was being said. Mother made progress, acknowledging there was a problem and that she made mistakes and was ready for unsupervised visits. At the interim review hearing, the court ordered unsupervised visits for mother.

The 12-month review report recommended returning the minor to mother. Mother was complying with individual therapy and not speaking negatively about father, she had moved to unsupervised visits and completed coparenting classes. The coparenting instructor said mother was past her anger and just wanted to do what was best for the minor. Father's individual therapists said they were unable to help him and he was

4

referred to a third therapist for parent coaching. Father continued to complain about mother when he thought the minor could not hear him. In coparenting class, father remained focused on the past and believed the information presented did not apply to him. Mother had transitioned to overnight visits. Father continued to have supervised visits but complained about the social worker, the foster mother, and mother. The report concluded mother demonstrated she could stay child focused and had integrated what she learned. Father could not.

At the 12-month review hearing in August 2012, the court placed the minor with mother under court supervision. The court ordered unsupervised visitation for father with supervised exchanges. The court further ordered communication between the parents to be by e-mail with copies to the social worker with no negative comments about the other parent.

Within a month of the hearing, the social worker brought a section 388 petition for modification to return to supervised visits for father to prevent him from discussing the case with the minor. The petition alleged that the minor reacted negatively toward her mother after an overnight visit with father and expressed concern about his finances and well-being. At the hearing, the court placed the minor with mother in Orange County, reinstated supervised visits for father and continued the matter. Father filed an extensive declaration contending the petition for modification was based on false assumptions, that the social worker was biased, and that mother had engaged in parental alienation for over five years. Father requested the return to a shared custody arrangement and termination of the Department's involvement.

The CASA report filed in October 2012 contrasted the minor's demeanor before and after the overnight visit with father. After the first two unsupervised visits the minor remained positive and loving toward her mother. After the first overnight visit the minor ignored mother, physically separated herself from mother, and refused to interact with mother until the CASA intervened. The minor continued to try to avoid responding to

5

mother. The CASA contacted both the social worker and the minor's therapist with her views.

The 18-month review report recommended termination of the dependency with legal and physical custody to mother and supervised visits for father. The minor, who was living with mother in Southern California, continued with therapy when she returned to Placer County for visits with father. Mother's counseling had been phased out as unnecessary and she appeared to be in compliance with the plan requirement to interact positively with father. There was an attempt to mediate the visitation schedule, but father ultimately declined to agree to the proposed plan. Father attended therapy with his third therapist who described him as "highly defended with rigid thought processes." Father continued to interact negatively with mother and did not demonstrate the ability to be child focused or apply what he had been exposed to in services. Father refused to attend the first visit after supervision was reinstated. The report explained the basis for the Department's petition for modification, i.e., the change in the minor's behavior after an overnight visit with father, the minor's concern about his financial condition, the minor's anger at her mother, and her request to the therapist to ask the judge for equal custody when she had never made any such request in the past. The report further stated that the minor's behavior toward mother after the overnight visit had regressed to what it had been at the outset of the dependency, although the day before the visit the minor had been happy and affectionate with mother. The social worker concluded that mother had benefitted from services while father had not and continued to be trapped in contention. Further, if disputes were not resolved in his favor, father's reaction was to blame others and refuse to participate. Father was unable or unwilling to see how he contributed to the problems in the family. This was the pattern throughout the course of the dependency proceedings and led to the recommendation to terminate the dependency with full custody to mother.

The combined hearing on the petition for modification and the 18-month review commenced in October 2012. Father was representing himself and questioned witnesses. The court repeatedly cautioned father that the purpose of the hearing was not to relitigate jurisdiction issues and that only what had happened since the last review hearing in August 2012 was relevant. The court further cautioned father that in trying to elicit testimony of prior events, he was showing he was fixed on the past and was not progressing.

The visit supervisor testified about a visit at the mall in July 2012 where the minor appeared sad and asked about visiting father after moving to Southern California. After father told the minor he and mother would work it out, the minor was fine. The visit supervisor stated that mother coordinated a recent visit for father with the minor, who was in the hospital for an infected tooth.

One of the therapists who was to provide coparenting services testified neither parent was able to coparent with the other and mechanisms such as e-mail communication were necessary to permit contact outside the program. While there were areas the parents were able to agree on, they were at an impasse on most issues.

The foster mother testified the minor expressed a desire to see mother but did not talk about calling or seeing father, although the foster mother encouraged her to talk about father. She described the minor's demeanor after the overnight visit with father to be similar to that when the minor first arrived in her care, pushing mother away and retreating from the openness she had achieved. She said the minor shared a common bond with father in that they liked some of the same things and the minor would talk to the social worker about that in a positive way.

Father's first therapist testified father was receptive to learning ways to control being upset but made little progress because he was convinced the system was unjust. At each session father would spend time venting about new events which had triggered his anger. Eventually the therapist felt further therapy was needed but he could not help.

7

The social worker testified that she saw father as having difficulty recognizing what people intended and misconstruing their statements. She was concerned that father had not learned to work cooperatively and be child focused, but mother had and had moved on. She questioned some of father's statements which distorted the past and could not tell if he was dishonest or saw things so differently that in his mind it was the truth.

The minor's therapist testified that nothing the minor had said led her to believe father was discussing the case in their unsupervised visits, however, she had also heard nothing which made her think that mother was coercing the minor to express a desire to live in Southern California. Her concern about the minor after the unsupervised visit was that the minor, who rarely talked about father, came in and wanted equally shared custody. This was a change from the minor's past statements. The minor's therapist opposed unsupervised visits with father based on father's physical activity in supervised visits and lack of any information father had changed or realized the behavior was inappropriate. The therapist was concerned about the minor's regression in behavior after the overnight visit.

Father testified in his own behalf. He denied he was focused on the past; he only brought up past events to show a pattern and help people understand what was going on. He said he had not spoken negatively about mother in front of the minor and has tried to be cordial. He objected to some of the services, finding the group sessions offensive.

The court, in ruling on the petition for modification and the 18-month review,, made it clear that it was aware of all the history from prior trials. On the petition for modification the court found there was a dramatic change in the minor's behavior after the unsupervised overnight visit and it was in the minor's best interests to return to supervised visits.

As to the review hearing, the court found father had demonstrated in testimony, examination and his closing remarks that he had completely failed to move past the acrimonious divorce and the initial allegations. The court further found father portrayed

8

himself as a victim and believed he was the subject of a "witch hunt." In declarations and e-mails father made it clear that he believed others were out to get him. The court observed that every professional who worked with the family came to the same conclusion that father was unwilling to progress and everything turned on how it affected him. It was father, not mother who wanted to continue the fight. The court found father was essentially unchanged from the time of the jurisdiction hearing and the allegations of the petition would still be sustained as to him. The court found that it was clear there was not a substantial risk of harm if the minor was returned to mother but there was as to father. Observing that termination of jurisdiction was required unless the conditions which led to the dependency were likely to return, the court concluded that strong exit orders and giving the family law court the ability to review the findings in the dependency case would prevent recurrence and ordered the dependency jurisdiction terminated. The court terminated father's services and granted sole legal and physical custody to mother. Father's visits were to be supervised and alternate between Orange and Placer Counties as arranged through a third party -- either "an agreed-upon third party or a professional agency at father's expense." The court further ordered that the family law court was to review the dependency file before modifying the custody and visitation orders. The court explained that the family law court would require a change of circumstances to modify custody or visitation orders and would have to make specific factual findings to do so. The court ordered that mother was to transport the minor to Placer County once a month for visitation. Formal orders containing the court's ruling were filed January 9, 2013. Father did not object when the orders were pronounced in open court or later when the formal orders were prepared.

## DISCUSSION

### I

The Department asserts as a preliminary matter that the notice of appeal is premature. We agree.

9

As a general rule, the time to appeal an order in a dependency proceeding runs from the time the order is pronounced in open court. (*In re Markaus V*. (1989) 211 Cal.App.3d 1331, 1337.) The juvenile court orders for custody and visitation on termination of the dependency are an exception to this rule because section 362.4 contemplates that written orders will be prepared and issued. (*In re Markaus V., supra,* at p. 1337.) Accordingly, the time to file a notice of appeal in this case ran, not from the pronouncement in open court but from the filing of the written orders. (*Ibid.)*

Here, the court gave its ruling on November 14, 2012. The notice of appeal was filed December 10, 2012. The written custody and visitation orders were filed January 9, 2013. The notice of appeal was premature. However, we exercise our discretion to treat the notice of appeal as filed immediately after the filing of the orders. (Cal. Rules of Court, rule 8.406(d).)

## II

Father argues the juvenile court custody order is too vague to give him notice as to what he must show has changed so that he can demonstrate that a modification of visitation and/or custody orders is in the minor's best interest.

"When the juvenile court terminates its jurisdiction over a minor who has been adjudged a dependent child of the juvenile court prior to the minor's attainment of the age of 18 years, and proceedings for dissolution of marriage . . . are pending in the superior court of any county, or an order has been entered with regard to the custody of that minor, the juvenile court . . . may issue . . . an order determining the custody of, or visitation with the child. [¶] Any order issued pursuant to this section shall continue until modified or terminated by a subsequent order of the superior court. The order of the juvenile court shall be filed in the proceeding for . . . dissolution . . . at the time the juvenile court terminates its jurisdiction over the minor, and shall become a part thereof." (§ 362.4.)

10

"Any custody or visitation order issued by the juvenile court at the time the juvenile court terminates its jurisdiction pursuant to Section 362.4 regarding a child who has been previously adjudged to be a dependent child of the juvenile court shall be a final judgment and shall remain in effect after that jurisdiction is terminated. The order shall not be modified in a proceeding or action described in Section 3021 of the Family Code unless the court finds that there has been a significant change of circumstances since the juvenile court issued the order and modification of the order is in the best interests of the child." (§ 302, subd. (d).)

The juvenile court's custody and visitation order provided: (1) full physical and legal custody of the minor to mother; (2) family law court to review the juvenile dependency file prior to making any changes in the current custody order; (3) father to have supervised visitation; (4) visits to be supervised by an agreed-upon third party or professional agency at father's expense; (5) one visit per month in Orange County, father to make arrangements; (6) one visit per month in Placer County, mother to bring minor for visit; and (7) visits to be up to four hours long. As required, the court order clearly provides the location, frequency, duration and responsibility for arranging transport and supervision for visits. (Fam. Code, §§ 3011, subd. (e)(1), 6323, subds. (c), (d).)

Appellant argues, without citation to authority, that the order was also required to include a reason for the order for supervised visitation. Neither the above-quoted statutes authorizing the juvenile court to make custody and visitation orders nor the form on which such orders are memorialized provide for a statement of reasons. To the extent that a statement of reasons for supervision is required, the court based its order granting the petition for modification to return to supervised visitation on the regression in the minor's behavior after the unsupervised overnight visit. The court also discussed at length the facts relating to father's intransigence and failure to benefit from services, all of which supported not only the custody order but the visitation order.

11

Generally, the reasons for ordering supervised visitation will be apparent from a perusal of the file before the court and are not specified in the visitation order. Because the order in this case is transferred from the juvenile dependency court to the family law court and, in light of the contentious dissolution and the circumstances of this case, the juvenile court specified that the family law court should familiarize itself with the state of the record at the time the orders were made by reviewing the dependency file. Such a review would provide all the information necessary for the family law court to ascertain the baseline from which the required "substantial change" could be measured. Father was present and litigated the issues and has actual knowledge of the facts and circumstances supporting the order of supervision.

Father is concerned that the minor lives in Orange County and the court in that county does not have access to the dependency file in Placer County. If this is a concern, in the event the family law case is transferred to Orange County, the parties are free to request that a sealed copy of the juvenile dependency file be transmitted with the family law case so that it will be available if a modification is requested.

While father believes he has fully complied with the elements of his plan, he demonstrated both before and at the hearing that he has not benefitted from his services to the point where he can have unsupervised interaction with the minor without placing her at risk of harm. In its rulings, the juvenile court made it abundantly clear that, while mother had progressed, father had not. There is nothing vague in the order. Father's difficulties with the order stem from his failure to accept that the established facts upon which the custody and visitation orders are based are not the facts of past events or facts he believes currently exist, but instead, those facts which the court found to be true.

### III

Appellant contends the juvenile court custody and visitation order improperly delegated to mother the power to deny visitation altogether because the order requires the parties agree on a visit monitor.

12

Father was present in court and litigated the custody and visitation issues. He failed to object to the visitation conditions when the court orally pronounced the order in open court and has forfeited the challenge on appeal. (*In re Christopher B*. (1996) 43 Cal.App.4th 551, 558; *In re Dakota S*. (2000) 85 Cal.App.4th 494, 501-502.)

Assuming for purposes of argument that the issue is not forfeited, father cannot prevail.

When a juvenile court enters custody and visitation orders on termination of the dependency, it may not delegate the power to determine whether visits will occur at all. (*In re Chantal S*. (1996) 13 Cal.4th 196, 213-214 [visits to begin when father's therapist determined father had made progress and minor's therapist to facilitate did not delegate discretion to determine whether visits would occur, noting father was not prejudiced by the order since the court could have denied visits altogether]; *In re T.H*. (2010) 190 Cal.App.4th 1119, 1123 [order that there would be supervised visitation to be determined by the parents made father's right to visits illusory when the right depended on the agreement of the mother who did not want him to visit and was unlikely to agree]; *In re A.C*. (2011) 197 Cal.App.4th 796, 799 [no delegation where the order required parents to agree on a monitor and if unable to do so, father would choose the monitor].)

The visitation order, on its face, does not improperly delegate authority to determine whether visits will occur. Unlike the order in *T.H*., this order grants visitation and specifies the number of supervised visits per month, the length of visits and where they will occur. The order also provides alternatives in the supervision of the visits, i.e., either a third party or a professional agency agreed on by the parents. The parents have been ordered to agree. If agreement is unreasonably withheld, it is a matter for the family court to enforce the order or modify the condition to avoid the problem. (*In re Chantal S*., *supra*, 13 Cal.4th at p. 214.)

Father asserts the acrimony between the parties may make agreement on a visit supervisor, whether third party or professional, problematic because mother will not

agree on a visit supervisor.  However, the evidence in this case indicates otherwise.
Mother, as the custodial parent has mitigated her rancor of the past at least insofar as
visitation is concerned and even facilitated the father's recent  visit with the minor, who
was in the hospital for an infected tooth.  Indeed, based on the evidence, it is father, not
mother, who may present problems in agreeing on a supervisor.  The parties have
successfully used e-mail communication, which was agreed on in therapy and ordered by
the court, to avoid the confrontation and animus present in face-to-face communication.
Such communication also provides a written record of the negotiations over visit
supervision, providing the family court a simple means of review in the event of
disagreement.  The order is neither illusory nor an improper delegation of the decision of
whether visits will occur.

IV

Father argues substantial evidence does not support supervised visits of four hours
or less.  He points to the unsupervised day visits he had with the minor prior to return to
supervision and argues there were no problems with those visits, so, limiting the time was
unsupported by the evidence.

When the sufficiency of the evidence to support a finding or order is challenged on
appeal, even where the standard of proof in the trial court is clear and convincing, the
reviewing court must determine if there is any substantial evidence -- that is, evidence
which is reasonable, credible and of solid value -- to support the conclusion of the trier of
fact.  (*In re Angelia P.* (1981) 28 Cal.3d 908, 924; *In re Jason L.* (1990) 222 Cal.App.3d
1206, 1214.)  In making this determination we recognize that all conflicts are to be
resolved in favor of the prevailing party and that issues of fact and credibility are
questions for the trier of fact.  (*In re Jason L.*, *supra*, 222 Cal.App.3d at p. 1214; *In re
Steve W.* (1990) 217 Cal.App.3d 10, 16.)  The reviewing court may not reweigh the
evidence when assessing the sufficiency of the evidence.  (*In re Stephanie M.* (1994) 7
Cal.4th 295, 318-319.)

14

Father relies, in part, on section 362.1, which authorizes visitation during the reunification period and states: "In order to maintain ties between the parent . . . and the child, and to provide information relevant to deciding if, and when, to return a child to the custody of his or her parent . . . [¶] . . . [v]isitation shall be as frequent as possible consistent with the well-being of the child. [¶] No visitation order shall jeopardize the safety of the child. . . ." (§ 362.1, subd. (a)(1).) The visitation order which is the subject of the appeal is not for reunification and the purposes set forth in the statute have no application here.

The challenged condition is a part of the juvenile court's custody and visitation orders upon termination of the dependency and is governed by section 362.4 and related statutory and rules provisions. The purpose of visitation orders in the family law context is to provide ongoing parental contact with the minor in a manner which furthers the best interests of the child. (Fam. Code, §§ 3020, 3040, subd. (c).) The court upon termination of the dependency has broad discretion in fashioning visitation orders which take into account both the safety and the best interests of the child. (*In re Emmanuel* R. (2001) 94 Cal.App.4th 452, 465; *In re Megan B*. (1991) 235 Cal.App.3d 942, 953.).

At the 12-month review hearing, the court approved a visit schedule for unsupervised visits for father. After the first overnight unsupervised visit, the minor regressed to the emotional and behavioral condition displayed when the dependency began. As a result, the juvenile court decided to circumscribe visitation for father with conditions to protect the minor and further her best interests. The resulting order of twice monthly supervised visits of four hours satisfied these twin objectives while still providing a reasonable visit for father and the minor. By the time of the orders terminating the dependency, father had made no progress in understanding his part in the initial problems which led to the dependency and caused the return to supervised visitation. He continued to take no responsibility and blamed others. The court's custody and visitation order reflected a necessary balance between the need to insure the minor's

15

emotional stability and father's need for contact with the minor.  Substantial evidence supported the court's order.

## DISPOSITION

The orders of the juvenile court are affirmed.


            NICHOLSON    , J.


We concur:


      BLEASE     , Acting P. J.


      HULL      , J.

16